UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

SHABTAI SCOTT SHATSKY, et al

          Plaintiffs,

     v.

THE SYRIAN ARAB REPUBLIC, et al.

          Defendants,
_____

Judge Richard J. Leon

06cv724(RJL)

**OPPOSITION OF THE SYRIAN ARAB REPUBLIC
TO PLAINTIFFS MOTION FOR LEAVE TO AMEND**

     This memorandum is submitted by the Syrian Arab Republic in opposition to plaintiffs motion, filed on April 10, 2008, seeking leave to amend its complaint in this action originally filed in 2002, dismissed in 2005 and thereafter refiled in 2006. The motion seeks to secure by amending the complaint plaintiffs filed under a repealed law, §1605(a)(7) of the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. §1605(a)(7), the advantages in this action of an extraordinarily punitive new federal law enacted on January 28, 2008, as §1083, <u>The terrorism exception to immunity</u>, part of a massive bill, the National Defense Authorization Act For Fiscal Year 2008, P.L. 110-181 ("the Act").

     This action was originally filed in November 2002 against Syria, related individuals and component organizational defendants (hereinafter "Syria" unless otherwise indicated) in a complaint that named as codefendants the Palestine Liberation Organization and the Palestinian

1

Authority, 02cv2280(RJL).  In May 2005, after the default of the PA and PLO was entered by the Clerk of this Court at plaintiffs request, plaintiffs filed a notice of voluntary dismissal dropping Syria and its related defendants from the case.. Almost a year later, on April 21, 2006, plaintiffs filed a complaint to commence this action, 06cv724(RJL).  There were several differences between the new 2006 complaint and the old 2002 complaint.  Among the changes, the new complaint added completely new and unrelated plaintiffs asserting claims based on the alleged fatal shooting of a settler while driving in the West Bank in March 1991, and all plaintiffs sought damages from the individual Syrian defendants in their personal capacities, as well as in their official capacities, to which the original 2002 complaint was limited.

§1083 of the Act repeals §1605(a)(7) of the Foreign Sovereign Immunities Act (FSIA), replacing it with a new section, §1605A.   These new provisions are so punitive that President Bush refused to sign the Act when originally passed by Congress in December 2007 -- thus imposing a pocket veto – because of the drastic threat it posed to Iraq, now viewed as a friendly nation. The President's <u>Justification for Refusal</u> to sign the bill issued by the White House on December 28, 2007 (attached as Exhibit A), describes several of the harsh and punitive effects of §1083. It was only after the Congress added a new sub section "d" to §1083, giving the President power to waive the punitive measures against Iraq, but leaving them otherwise intact against others, that the President signed the bill on January 28, 2008.  He immediately issued on the same day the waiver to protect Iraq..

The threats posed by §1083 as seen by the Executive Branch and the veto they prompted came as a surprise to Congress.  It expected the Act to be signed into law in December 2007.

§1083 appears to have received very little if any Committee or Congressional

consideration or debate before it was included in the massive military appropriations Act, and to have been drafted with unusual anonymity by persons well-versed in the intricacies of the "terrorism exception" contained in FSIA §1605(a)(7) and related provisions, in effect since 1996. The exception strips of sovereign immunity only those sovereign States the U.S. Secretary of State has chosen, or later chooses, to designate "sponsors of terrorism." Always a mere handful, at present there are only five states, Cuba, Iran, North Korea, Sudan and Syria, denied the sovereign equality on which the United Nations is based in violation of Article 2(1) of its Charter. The White House issued several documents in December 2007 and January 2008 seeking to explain the President's awkward veto and waiver. Several are listed and attached as Exhibits A-D to this Memorandum.

**Argument**

As heightened by §1083, the terrorism exception is now overtly punitive, threatening Syria and other nations currently and formerly chosen by the U.S. Secretary of State for designation as "sponsors of terrorism" with not only liability where other sovereigns enjoy immunity but with punishment as well, in violation of international law. Indeed Libya, not currently on the list is seeking, with considerable support from the Executive Branch, a second amendment to §1083 to add a waiver provision for Libya, a sub paragraph "e" similar to sub paragraph "d" enacted for Iraq's benefit. See Exhibit E attached, one of a number of letters signed by Secretary Rice and three other Cabinet members, dispatched in March 2008 to Congressional leadership requesting enactment of a waiver provision for Libya.

The reality is that §1083 is so draconian, unclear as to its effect and potentially drastic in its impact and world-wide interference with banking, investment and financial transactions, among

other consequences, as to threaten nations, their institutions, citizens and interests which are not designated "sponsors of terrorism."   For these reasons and for the reasons that follow plaintiffs motion for leave to file an amended complaint should be denied:.

(1) The motion to amend the complaint should be denied because it was filed too late. A motion to invoke §1083 and amend a complaint to make §1605A applicable in a pending action may be made "only ... within the 60-day period beginning on the date of the enactment of this Act."  §1083(c)(2)(C)(ii).  This 60 day period began on January 28, 2008, the date of the enactment of the Act, and ended on March 27, 2008.  Plaintiffs present motion was filed on April 10, 2008, well after the permissible 60-day period.

(2) The motion to amend the complaint should be denied because plaintiffs on March 21, 2008 elected to file an original complaint commencing a new action under §1605A in this Court within the 60 day period.   08cv496(RJL).  Having chosen to file a new action, plaintiffs cannot pursue both an amendment to this action and their new action based on the same allegations.

(3) The motion should be denied because plaintiffs motion papers make no effort whatsoever to show that the criteria for amendment in §1083(c)(2)(A) have been met, as for example the requirement that the action "(iii) has been adversely affected on the grounds that either or both of these provisions  [§1605(a)(7) or the Flatow amendment] fail to create a cause of action against the state."  §1083(c)(2)(A)(iii).   Plaintiffs simply refer to the provisions of the Federal Rules of Civil Procedure as the basis for their motion to amend.

 (4)  The motion should be denied because §1605A, as well as §1605(a)(7), while purporting on their face to treat all states equally, are discriminatory.  They seek to selectively strip of sovereign immunity states the U.S. Secretary of State chooses to designate as "sponsors

of terrorism," in contravention of the basic right of each nation to sovereign equality. Sovereign equality is a basic right confirmed in Art. 2(1) of the U.N. Charter, as well as other multinational treaties and customary international law binding on the U.S. The "terrorism exception" under §1605(a)(7) and §1605A violates principles of sovereignty, comity, fundamental fairness and due process under international law and the Due Process Clause and other provisions of the U.S. Constitution, all binding on the U.S.

(5)  The motion should be denied because §1083 is an impermissible interference by Congress with the Article III powers, duties and functions of the Judicial Branch. Acts of Congress cannot interfere with or alter, as §1083 purports to do, matters in litigation, or that have been adjudicated in a case or judgments rendered by Article III Courts. Cf. Roeder v. The Islamic Republic of Iran, 195 F.Supp.2d 140, 162-66 (D.C.D. 2002)(EGS).

(6)  The motion for leave to file an amended complaint should be denied because the provisions of §1083 are directly contrary to the U.S. Constitution, laws, multinational treaties and customary international law binding on the U.S.. Syria disputes the rule in this Circuit that a foreign state is not a person for purposes of the U.S. Constitution, particularly since in an action such as this one, FSIA §1606 purports to subject the sovereign state to liability "in the same manner and to the same extent as a private individual under like circumstances." This position of Syria has recently been rejected by the Court of Appeals in its Judgment filed on January 25, 2008 in Wyatt v. Syria Arab Republic, 06-7094, 01cv1628(RMU) in this Court, and in its per curiam order filed on March 26, 2008, denying Syria's petition for rehearing en banc. The issue has not yet, however, been directly considered on the merits by the U.S. Supreme Court.

**Conclusion**

Plaintiffs motion to amend the complaint should be denied.

Dated:   April 21, 2008                         Respectfully submitted,


        s/

Ramsey Clark  DC Bar 73833

        s/

Lawrence W. Schilling
37 W. 12th St   2B
New York, NY 10011
212-989-6613   fax 212-979-1583
 lwschilling@earthlink.net


Abdeen Jabara
113 University Place 8th Floor
New York, NY 10003
212-598-0646

Attorneys for the Syrian Arab Republic


. .

<u>Shatsky</u> v. <u>Syria</u>
06cv724(RJL)

# EXHIBITS

**OPPOSITION BY THE SYRIAN ARAB REPUBLIC
TO PLAINTIFFS MOTION FILED APRIL 10, 2008**

<u>Exhibit</u>

| | | |
|---|---|---|
| A | Memorandum of Disapproval | December 28, 2007 |
| B | Fact Sheet Section 1083 | December 28, 2007 |
| C | Presidential Determination No.2008-9 Exercising waiver in Iraq's Favor 73 FR 6571, February 5, 2008 | January 28, 2008 |
| D | Memorandum of Justification for Waiver | January 28, 2008 |
| E | Letter to Congressional leaders from Secretary of State Rice and three other Cabinet Members requesting amendment of §1083 to authorize Presidential waiver in Lybia's favor | March 2008 |