# EXHIBIT A




For Immediate Release
Office of the Press Secretary
December 28, 2007

## Memorandum of Disapproval

**White House News**

I am withholding my approval of H.R. 1585, the "National Defense Authorization Act for Fiscal Year 2008," because it would imperil billions of dollars of Iraqi assets at a crucial juncture in that nation's reconstruction efforts and because it would undermine the foreign policy and commercial interests of the United States.

The economic security and successful reconstruction of Iraq have been top priorities of the United States. Section 1083 of H.R. 1585 threatens those key objectives. Immediately upon enactment, section 1083 would risk the freezing of substantial Iraqi assets in the United States --including those of the Development Fund for Iraq (DFI), the Central Bank of Iraq (CBI), and commercial entities in the United States in which Iraq has an interest. Section 1083 also would expose Iraq to new liability of at least several billion dollars by undoing judgments favorable to Iraq, by foreclosing available defenses on which Iraq is relying in pending litigation, and by creating a new Federal cause of action backed by the prospect of punitive damages to support claims that may previously have been foreclosed. This new liability, in turn, will only increase the potential for immediate entanglement of Iraqi assets in the United States. The aggregate financial impact of these provisions on Iraq would be devastating.

While my Administration objected to an earlier version of this provision in previous communications about the bill, its full impact on Iraq and on our relationship with Iraq has become apparent only in recent days. Members of my Administration are working with Members of Congress to fix this flawed provision as soon as possible after the Congress returns.

Section 1083 would establish unprecedented legal burdens on the allocation of Iraq's funds to where they are most needed. Since the fall of Saddam Hussein, I have issued Executive Orders to shield from entanglement in lawsuits the assets of the DFI and the CBI. I have taken these steps both to uphold international legal obligations of the United States and to remove obstacles to the orderly reconstruction of Iraq. Section 1083 potentially would place these crucial protections of Iraq's core assets in immediate peril, by including a provision that might be misconstrued to supersede the protections I have put in place and to permit the judicial attachment of these funds. Iraq must not have its crucial reconstruction funds on judicial hold while lawyers argue and courts decide such legal assertions.

Moreover, section 1083 would permit plaintiffs to obtain liens on certain Iraqi property simply by filing a notice of pending action. Liens under section 1083 would be automatic upon filing a notice of a pending claim in a judicial district where Iraq's property is located, and they would reach property up to the amount of the judgment plaintiffs choose to demand in their complaints. Such pre-judgment liens, entered before claims are tested and cases are heard, are extraordinary and have never previously been available in suits in U.S. courts against foreign sovereigns. If permitted to become law, even for a short time, section 1083's attachment and lien provisions would impose grave -- indeed, intolerable -- consequences on Iraq.

Section 1083 also includes provisions that would expose Iraq to increased liability in lawsuits. Contrary to international legal norms and for the first time in U.S. history, a foreign sovereign would be liable for punitive damages under section 1083. Section 1083 removes defenses common for defendants in the United States -- including *res judicata*, collateral estoppel, and statutes of limitation --upon which the Iraqi government has relied. And section 1083 would attempt to revive a $959 million judgment against the new democratic Government of Iraq based on the misdeeds of the Saddam Hussein regime.

Exposing Iraq to such significant financial burdens would weaken the close partnership between the United States and Iraq during this critical period in Iraq's history. If Iraq's assets are frozen, even temporarily, that could

reduce confidence in the Iraqi dinar and undermine the success of Iraq's monetary policy. By potentially forcing a close U.S. ally to withdraw significant funds from the U.S. financial system, section 1083 would cast doubt on whether the United States remains a safe place to invest and to hold financial assets. Iraqi entities would be deterred from engaging in commercial partnerships with U.S. businesses for fear of entangling assets in lawsuits. Section 1083 would be viewed with alarm by the international community and would invite reciprocal action against United States assets abroad.

The adjournment of the Congress has prevented my return of H.R. 1585 within the meaning of Article I, section 7, clause 2 of the Constitution. Accordingly, my withholding of approval from the bill precludes its becoming law. *The Pocket Veto Case*, 279 U.S. 655 (1929). In addition to withholding my signature and thereby invoking my constitutional power to "pocket veto" bills during an adjournment of the Congress, I am also sending H.R. 1585 to the Clerk of the House of Representatives, along with this memorandum setting forth my objections, to avoid unnecessary litigation about the non-enactment of the bill that results from my withholding approval and to leave no doubt that the bill is being vetoed.

This legislation contains important authorities for the Department of Defense, including authority to provide certain additional pay and bonuses to servicemembers. Although I continue to have serious objections to other provisions of this bill, including section 1079 relating to intelligence matters, I urge the Congress to address the flaw in section 1083 as quickly as possible so I may sign into law the National Defense Authorization Act for Fiscal Year 2008, as modified. I also urge the Congress to ensure that any provisions affecting servicemember pay and bonuses, as well as provisions extending expiring authorities, are retroactive to January 1, 2008.

GEORGE W. BUSH

THE WHITE HOUSE,

December 28, 2007.

# # #

**Return to this article at:**
http://www.whitehouse.gov/news/releases/2007/12/20071228-5.html


CLICK HERE TO PRINT