UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHABTAI SCOTT SHATSKY, et al.

        Plaintiffs,

                                          06-CV-724(RJL)

    v.

THE SYRIAN ARAB REPUBLIC, et al

        Defendants.

**REPLY IN FURTHER SUPPORT OF PLAINTIFFS'
MOTION FOR LEAVE TO AMEND**

Syria asserts a handful of grounds in opposition to plaintiffs' motion to amend, all of which are frivolous:

Syria's main argument is that the motion is untimely under §1083 of the National Defense Authorization Act ("NDAA") and does not meet the conditions for "conversion" of actions under §1083.

This would be a winning argument if plaintiffs had filed their motion under §1083 of the NDAA, **but they did not**. Plaintiffs' motion is a simple motion to amend, as their motion papers clearly, expressly and repeatedly state, brought under Fed.R.Civ.P. 15.

Syria does not even claim, much less show, that in enacting §1083, Congress intended to limit or override the garden-variety amendment provisions of Rule 15. Syria made no such argument because it cannot. Section 1083 is unquestionably a remedial statute designed to help U.S. victims of state-sponsored terrorism. *See* S55, Congressional Record – Senate (Jan 22, 2008) (remarks of Senator Lautenberg) ("My provision in this bill fixes this problem by

1

reaffirming the private right of action…against the foreign state sponsors of terrorism themselves") (emphasis added). It would therefore be farfetched in the extreme to conclude that Congress intended §1083 – which is meant to **expand** the rights of American terrorism victims – to **limit** the ability of such plaintiffs to seek relief under Rule 15.

On the contrary, the "conversion" provisions of §1083 are clearly meant to broaden the rights of such plaintiffs, since they direct that the Court "***shall***, on motion made by plaintiffs … give effect" to the action "as if the action had originally been filed under §1605A." §1083(c)(2) (emphasis added). In other words, §1083 provides for amendment as a matter of **right** (when certain conditions are met). By contrast, Rule 15 allows amendment only with **leave** of the court (except for one initial amendment by right).

In short, §1083 provides additional rights to victims of state sponsored terrorism, but it in no way negates their ability to seek leave to amend pursuant to the normal criteria of Rule 15.

This conclusion is directly supported by the recent decisions of this court in *Harris v. Socialist People's Libyan Arab Jamahirya*, 2008 WL 591009 (D.D.C. 2008) and *Clay v. Socialist People's Libyan Arab Jamahirya*, 2008 WL 591008 (D.D.C. 2008). The plaintiffs in those actions moved under Rule 15 – exactly as do the instant plaintiffs – to amend their complaint to confirm it to §1605A following passage of the NDAA. *Id*. Libya opposed the motions. *Id*. Judge Roberts denied plaintiffs' motions as moot, since the plaintiffs were entitled to amend their complaints by right under Rule 15(a). *Id*.

Thus, *Harris* and *Clay* stand for the proposition that the provisions of Rule 15 are unaffected by §1083 of the NDAA. If amendment is proper under Rule 15 – whether by right or because the court finds that the conditions for leave to amend are met – the plaintiffs may amend to state a claim under §1605A, irrespective of whether the conditions of §1083 are met.

Syria also argues that the amendment should not be allowed because the new section 1605A of the FSIA is "draconian," "drastic," "discriminatory" and "violates principles of sovereignty, comity, fundamental fairness and due process under international law and the Due Process Clause and other provisions of the U.S. Constitution." Opp. Memo at 3-5. Moreover, Syria avers that the new amendments to the FSIA constitute "an impermissible interference by Congress with the Article III powers, duties and functions of the Judicial Branch" and "are directly contrary to the U.S. Constitution, laws, multinational treaties and customary international law binding on the U.S." *Id*. at 5.

These fulsome quasi-political arguments should be rejected for several reasons:

First, Syria's claims are bald and unarticulated. Syria blithely tosses out terms such as "international law," "other provisions of the U.S. Constitution" and "multilateral treaties" without even bothering to specify which principles of international law, which constitutional provisions and which treaties it imagines to have been offended by the enactment of §1605A. Clearly, this Court should not, and as a practical matter, cannot, consider vague and perfunctory "arguments" of this type.

Second, Syria has "neglected" to inform the Court that some of its arguments in this regard have already been considered and rejected by the Court of Appeals.  For example, Syria's claim that "§1605A, as well as §1605(a)(7) … are discriminatory" and violate "the basic right of each nation to sovereign equality … confirmed in Art. 2(1) of the U.N. Charter" (*id*. at 4-5) was recently rejected by the Court of Appeals as unworthy even of an opinion. *Wyatt v. Syrian Arab Republic*, 2008 WL 441828 (D.C. Cir. 2008).

Third, at issue here is merely a motion to amend, not the merits of the action. In order to block amendment of the complaint on these grounds, Syria would have to prove ***definitively*** that

3

the amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The only way Syria could show such futility would be to convince the Court that §1605A is unconstitutional. Syria has not even scratched the surface of such an argument. Indeed, the bald and telegraphic fashion in which Syria rolls out its objections leaves the clear impression that Syria is objecting only "for the record."

Syria's final argument in opposition is that "plaintiffs on March 21, 2008 elected to file an original complaint commencing a new action under §1605A in this Court within the 60 day period. 08cv496(RJL) … plaintiffs cannot pursue both an amendment to this action and their new action based on the same allegations." *Id*. at 4.

This argument, too, is meritless:

First, the fact that, out of an abundance of caution in the wake of these legislative changes, plaintiffs have both moved to amend the existing action and filed a new action, is not grounds to deny the motion to amend. Defendants have neither been served nor appeared in the new action, and it remains to be seen whether they will appear once they have been served. Pressing a case against an absent defendant will severely prejudice plaintiffs, as it limits their ability to obtain discovery and renders any judgment entered more vulnerable to vacatur.

Nor is there any reason to delay this action while plaintiffs go through the extremely time-consuming process of serving the new action under §1608 of the FSIA.

Moreover, if defendants appear in the new action they will no doubt seek to have it dismissed. Thus, defendants' demand that plaintiffs not be allowed to proceed on this action is made in blatant bad faith, since they will also seek to have the new action dismissed (if they appear) and to leave the plaintiffs with no avenue of relief at all.

Second, defendants are flat wrong in asserting that "plaintiffs cannot pursue both an amendment to this action and their new action based on the same allegations."

On the contrary, "a court faced with a duplicative suit will commonly stay the second suit, dismiss it without prejudice, enjoin the parties from proceeding with it, <u>or consolidate the two actions</u>." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138-139 (2nd Cir. 2000) (emphasis added).

While such cases are not common, neither are they unheard of. For example, plaintiffs concerned about challenges to federal subject-matter jurisdiction and limitations often file identical, parallel federal and state actions. The defendants in such cases often remove the state action to federal court, and the two identical federal actions are then consolidated by the federal court.

Once service is completed in their new suit, plaintiffs will move for such consolidation. Fully consolidating this action with the new action will not burden the Court or the defendant in any manner whatsoever, and will relieve plaintiffs of the risk inherent in having to choose between one of the two proceedings, each of which defendants will likely seek to extinguish on *different* grounds. Congress certainly did *not* intend that American victims of state-sponsored terrorism be forced to take such a gamble.

Plaintiffs will expand further on this point at the conference scheduled for May 12, 2008, if the Court finds it useful or appropriate.

WHEREFORE, plaintiffs' motion should be granted.

Signature block and certification of service

        Plaintiffs,
        by their Attorneys,

        <u>/S/ David J. Strachman</u>
        David J. Strachman
        District Court of D.C. Bar No. D00210
        McIntyre, Tate & Lynch LLP
        321 South Main Street, Suite 400
        Providence, RI 02903
        (401) 351-7700
        (401) 331-6095 (fax)
        djs@mtlhlaw.com

## <u>CERTIFICATION</u>

I certify that on May 1, 2008 I filed this pleading via the ECF system which served the following counsel of record:

Ramsey Clark
Lawrence W. Schilling
37 West 12th Street
Suite 2B
New York, NY 10011

        <u>/S/ David J. Strachman</u>